Filed 12/20/21  In re D.A.G. CA2/6

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| In re D.A.G. et al., Persons Coming Under the Juvenile Court Law. | 2d Juv. No. B312115 (Super. Ct. Nos. J072219, J072220, J072480) (Ventura County) |
| VENTURA COUNTY HUMAN SERVICES AGENCY,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>B.D.,<br><br>Defendant and Appellant. | |

B.D. (mother) appeals the *ex parte* denial of her petition to reinstate family reunification services (Welf. & Inst. Code,[1] § 388) and the subsequent termination of her parental rights to minor

---

[1] All statutory references are to the Welfare and Institutions Code.

sons D.A.G and D.K.G. and daughter Z.K. (Welf. & Inst. Code, §366.26). We agree and reverse.

FACTS AND PROCEDURAL BACKGROUND

Ventura County Child Welfare Services (CWS) learned in June of 2018 that mother and father were using drugs and leaving their infant son D.A.G. with grandparents for days at a time. CWS contacted mother and opened a voluntary family preservation case. She completed her program and obtained a restraining order against father, who had a history of criminal convictions and domestic violence.[2] Mother gave birth to a second son, D.K.G., in October of 2018.

Mother relapsed on methamphetamine in August of 2019. She agreed to enter rehabilitation but skipped her intake appointment and ceased communicating with case workers. This prompted CWS to initiate dependency proceedings for D.A.G. and D.K.G. under section 300, subdivision (b)(1). CWS eventually found mother and the two boys at a domestic violence shelter. Mother was pregnant with a third child by father. CWS detained the boys and placed them with confidential "resource parents"[3] while mother sought inpatient substance abuse treatment.

The juvenile court held a jurisdiction and disposition hearing for D.A.G. and D.K.G. on September 17, 2019. Mother consented to jurisdiction. The court offered reunification services and authorized visitation on the condition she remain in treatment. The boys reunited with mother on an extended visit

---

[2] Father is not a party to this appeal.

[3] A "resource parent" is the umbrella term for those trained and approved to provide adoptive or foster care to minors in California.

2

when she finished her program in November of 2019.  Daughter Z.G. was born in January of 2020.

Mother and children moved in with grandparents in March of 2020.  Case workers began having trouble contacting mother around this time.  Most concerning, mother was again disappearing for days and leaving the children in grandparents' care.  CWS terminated the boys' extended visit and filed a third dependency petition seeking jurisdiction over Z.G. as well.  Mother admitted relapsing again.  Z.G. and her brothers were detained in relative care with grandparents.

The juvenile court combined D.A.G.'s and D.K.G.'s six-month review hearing with Z.G.'s jurisdiction and disposition hearing on May 26, 2020.  CWS recommended terminating reunification services as to D.A.G. and D.K.G. and bypassing services as to Z.G.  Mother initially requested contested hearings on these recommendations.  Her counsel withdrew the requests in open court when she learned CWS would seek a permanent plan of legal guardianship with grandparents.  The court then terminated services as to D.A.G. and D.K.G.  It sustained jurisdiction as to Z.G. and ordered services bypassed under section 361.5(b)(10).[4]  The court directed CWS to seek a criminal record exemption for grandfather, whose decades-old robbery conviction prevented his approval as a resource parent.[5]  A 366.26 hearing was scheduled for July of 2020.

---

[4] The court continued Z.G.'s jurisdiction hearing from May 26, 2020 to May 29, 2020 to allow counsel to research whether mother needed to formally waive reunification services.

[5] CWS sought grandfather's exemption pursuant to a recent Fourth District case concluding Health and Safety Code section 1522 violated due process to the extent it barred a non-parent caregiver with a criminal record from seeking custody of a child

3

Obtaining grandfather's exemption took CWS longer than expected.  This resulted in several continuances of the 366.26 hearing.  CWS announced in November of 2020 that it had finally obtained the exemption, and, further, that it now recommended adoption instead of legal guardianship as the permanent plan for all three children.  The court continued the section 366.26 hearing to March of 2021 so the agency could properly serve mother and father with notice.

In response, mother petitioned to modify the May 2020 orders terminating services as to D.A.G. and D.K.G. and bypassing services as to Z.G.  (§ 388, subd. (a).)  She explained how she withdrew her requests for contested hearings on these issues only because CWS recommended guardianship with grandparents as the permanent plan.  Mother described how she regularly visited the children over the past ten months and provided their caregivers with groceries and financial assistance.  In addition, she had remained sober for eight months and participated voluntarily in substance abuse treatment, domestic violence counseling, individual therapy, and parenting groups.  She requested six months of reunification services with all three children and a continuance of the implementation hearing so an interactional study could be performed.

The juvenile court denied mother's section 388 petitions *ex parte*, i.e., without a hearing.  It found the children adoptable and terminated her parental rights.  Mother appealed.

---

with whom he had developed a "parental bond."  (*In re C.P.* (2020) 47 Cal.App.5th 17, 31, quoting *In re H.K.* (2013) 217 Cal.App.4th 1422, 1435 [case remanded for factual findings on whether type of bond between caregivers and minor "'worthy of protection as a fundamental interest'"].)

DISCUSSION

Mother challenges the *ex parte* denial of her petitions to modify. She also appeals the subsequent orders denying her request for a continuance and terminating her parental rights. We conclude her petitions warranted a full section 388 hearing and reverse judgment.

*The Juvenile Court Erred When It Denied Mother's*
*Petition Without a Hearing*

Section 388, subdivision (a) allows a parent to seek modification of an earlier order of the dependency court. (*In re Marilyn H.* (1993) 5 Cal.4th 295, 309.) The court may deny a section 388 petition *ex parte* if it fails to make a "prima facie showing of changed circumstances and that the proposed change would promote the best interests of the child." (*In re Zachary G.* (1999) 77 Cal.App.4th 799, 806; see Cal. Rules of Court, rule 5.570(d)(1).) The court should construe the petition's allegations liberally in favor of granting a hearing. (*In re Jasmon O.* (1994) 8 Cal.4th 398, 415; Cal. Rules of Court, rule 5.570(a).) We review summary denials for abuse of discretion. (*Jasmon O.* at p. 415; Cal. Rules of Court, rule 5.570(h).)

The basis of each denial order is succinct and clear. Both orders relating to D.A.G. and D.K.G. found "no additional services could be offered" because 18 months had passed since the boys were removed from mother's care.[6] The order relating to Z.G. found mother had not shown changed circumstances because she was still "very early in her latest attempts to comply with

---

[6] Mother consented to the court's jurisdiction over D.A.G. and D.K.G. on September 17, 2019. The ex parte orders are dated March 12, 2021.

5

what was her case plan."[7] None of the three denial orders acknowledge CWS's about-face from legal guardianship to adoption in November of 2020.

Mother withdrew her requests for contested hearings in May of 2020 based on assurances CWS would implement a permanent plan of legal guardianship for all three children in July of 2020. CWS considered the likelihood of adoption as "nil" around this time even if it obtained the exemption. However, the 366.26 hearing did not take place in July. The court continued it to August, then to November, while CWS sought grandfather's exemption. The switch from legal guardianship to adoption led to yet another four month continuance to March of 2021. We note the only explanation given by counsel for CWS's abrupt change was that the agency performed "further research" after receiving the exemption.

We view the mother's showing of changed circumstances in context with the strictures placed on her while her case remained in this holding pattern. Having agreed to a plan of guardianship, she secured her children's ongoing safety and care without jettisoning her right to maintain a consistent, if limited, role in their lives while she addressed her personal demons. She visited as often as allowed and purchased them groceries while CWS sought grandfather's exemption. Mother requested (and was denied) modest increases in visitation time. She remained sober and restarted her substance abuse program. When CWS announced in November of 2020 that it intended to terminate her parental rights, she joined a domestic violence support group, a

---

[7] Mother's sobriety period (eight months) was indeed brief considering her long history of drug use. (See, e.g., *In re Cliffton B.* (2000) 81 Cal.App.4th 415, 423 [seven months of sobriety since relapse, "while commendable, was nothing new"].)

12-step program, a parenting program, and resumed individual therapy with her CWS-assigned psychologist. Receipts, attendance sheets, and other exhibits attached to her declaration document these activities, as do CWS's own reports and memoranda. This warranted a full hearing.

Mother's section 388 petition also showed resuming reunification services would promote her children's best interests. The juvenile court was required to assume adoption would sever her parental ties. (See *In re Caden C.* (2021) 11 Cal.5th 614, 633 ["Because terminating parental rights eliminates any legal basis for the parent or child to maintain the relationship, courts must assume that terminating parental rights terminates the relationship"].) Respondents suggest mother's failure to bond meaningfully with her children, particularly the younger two, indicates they would not benefit from her presence in their lives. This reasoning places mother in a Catch-22. The guardianship plan recommended by CWS in May of 2020 prompted mother to forego further reunification services. A restrictive visitation schedule, i.e., two hour-long visits per week, was ordered pending implementation of that plan in July. This schedule eventually extended over eight months, providing a modicum of contact but little opportunity to deepen her relationship with the children.

Construing the petition's allegations liberally, we conclude mother presented sufficient evidence that ongoing supervised visits would be in the children's best interests, and conversely, that abruptly ending them would not. (See *In re Aljamie D.* (2000) 84 Cal.App.4th 424, 432 ["to be entitled to a hearing on her petition, appellant needed only to show 'probable cause'; she was not required to establish a probability of prevailing on her petition"]; *In re Heather P.* (1989) 209 Cal.App.3d 886, 891 [requesting parent must only present "any evidence that a hearing would promote the best interests" of the children].)

*Reversing the Juvenile Court's Ex Parte Denial of Mother's Petition Requires Reversing Its Subsequent Orders*

The juvenile court must provide a fair hearing on mother's section 388 petition before it proceeds to a section 366.26 hearing. (*In re Lesly G.* (2008) 162 Cal.App.4th, 904, 915-916, citing *In re Hashem H.* (1996) 45 Cal.App.4th 1791, 1799-1801.) We reverse the orders terminating her parental rights and selecting adoption as the permanent plan for D.A.G., D.K.G., and Z.G. for this reason. (*Ibid.*) The juvenile court shall schedule further hearings on mother's section 388 petition, giving all parties a reasonable opportunity to address any recent developments. A reasonable reunification plan shall be established if mother meets her burden under section 388. If she does not, the juvenile court may proceed with a section 366.26 hearing and make appropriate orders. (*In re Jeremy W.* (1992) 3 Cal.App.4th 1407, 1417.) Mother may renew her request for an interactional study if she chooses.

## DISPOSITION

The judgment (order terminating parental rights and selecting adoption as the permanent plan for the three minors) is reversed. On remand, the juvenile court shall conduct an evidentiary hearing on mother's section 388 petition.

NOT TO BE PUBLISHED.

PERREN, J.

We concur:

YEGAN, Acting P.J.                    TANGEMAN, J.

8

Tari L. Cody, Judge
Superior Court County of Ventura

_____

Donna Balderston Kaiser, under appointment by the Court of Appeal, for Defendant and Appellant B.D.

Tiffany N. North, County Counsel, Joseph J. Randazzo, Deputy County Counsel, for Plaintiff and Respondent County of Ventura County Human Services Agency.